## WILLIAMS v. LENFANT

(January 19, 1931. Opinion and Decree.)
(February 2, 1931. Rehearing Refused.)
(March 3, 1931. Writs of Certiorari and Review Refused by Supreme Court.)

Pomes & McCabe, of New Orleans, attorney for plaintiff, appellee.

Claude L. Johnson, of New Orleans, attorney for defendant, appellant.

JANVIER, J. Plaintiff, while seated on the right front seat of the automobile of his brother-in-law, who was driving the car, received injuries as the result of a collision between that automobile, a Chevrolet, and another, a Packard, owned and occupied by defendant and driven either by defendant himself, or, at his invitation, by a young lady friend· of his. It is immaterial that, possibly, defendant's friend may ·have been at the steering wheel, because defendant's counsel admits that, under the circumstances, defendant would have been chargeable with any legal responsibility which might result from any negligent act of his friend in driving his car under his direction, and with him present.

The accident occurred at about 11 o'clock at night on the eve of January 1, 1928. The Chevrolet in which plaintiff and his brother-in-law were riding had proceeded a short distance down the river side of North Rampart street and had reached the corner of St. Louis street, when the driver thereof, desiring to go out St. Louis street, toward the lake, turned to his left and stopped for a few seconds on the neutral ground of North Rampart street. Defendant's car was coming up the lake side of North Rampart street, and plaintiff contends that the driver thereof was negligent in approaching the intersection at a rapid rate of speed and in not according to the automobile in which plaintiff was riding the .right-of-way to which it was entitled under the law, and also that, if the driver of the Chevrolet was at fault, nevertheless that negligence is not attributable to plaintiff, who was riding with him as h's guest and who had nothing to do with the operation of the automobile.

Counsel for defendant contends that the driver of defendant's car was not negligent in the particulars referred to, but that, if he was, plaintiff himself' was negligent in that he had every opportunity to see the approaching car and to warn the driver of the car in which he was riding and that, thus, his failure to warn the driver prevents his recovery.

The trial court rendered judgment in favor of plaintiff for $1,200 and the case is now before us on appeal from that judgment.

As to what occurred while the Chevrolet was standing on the neutral ground, there is no evidence except that adduced on behalf of plaintiff, so we will accept that as portraying the true facts. Plaintiff's witnesses, himself, his brother-in-law and a pedestrian bearing the name Lopez, stated that, while the Chevrolet was standing on the neutral ground of North Rampart street, its horn was blown. Under these circumstances, under the provisions of Ordinance No. 7490 C. C. S., paragraphs "A," "B," and "D" of section 7, article 1, the Chevrolet was entitled to the right-of-way across the lake side of North Rampart street, and defendant's car, which was approaching that driveway, should. have stopped and should have accorded to the Chevrolet that right to which it was entitled under the provisions of the ordinance to which we have referred. We are well convinced that defendant's Packard was approaching at an exceedingly rapid rate of speed and also that we are not in error in reaching the conclusion that, in this regard, there was negligence chargeable to defendant.

But, although the driver of defendant's car was at fault in the particular referred to, it does not necessarily follow that that negligence was the sole cause of the resulting collision, because the ordinance does not give to him who is crossing the absolute and immediate right to proceed just because he has stopped on the neutral ground and has sounded his horn. His right to proceed does not come into existence until he has not only stopped and blown his horn, but has also afforded to those who may be on the driveway he wishes to enter sufficient time to stop their cars, for, under the provisions of the ordinance itself, he may obtain the right to cross, "provided the vehicle shall come to a full stop, when about to leave the neutral ground and enter the roadway, shall signal with horn, and give opportunity for approaching vehicles in the roadway to come to a stop." Dunbar v. Kaul, 12 La. App. 605, 126 So. 705, 706; Breaux v. Cangelosi, 10 La. App. 765, 123 So. 151.

That defendant's Packard was not afforded an opportunity to stop is very evident from the fact of the accident itself and also from the testimony of the driver of the Chevrolet, who states that he did not even see the Packard:

"Q. Did you look down Rampart street to see if there were any automobiles coming?

"A. I looked down and seen no car coming.

"Q. You saw no car coming?

"A. No.

"Q. Was there any obstruction in the street to prevent you from seeing if there was a car coming?

"A. No, sir.

"Q. If there was a car coming down that street, you could have seen it if you looked?

"A. I looked.

"Q. And you didn't see a car coming?

"A. No, sir."

That the Packard car was there and was approaching him is, of course, manifest from the subsequent collision and also from the testimony of plaintiff, who states

that he saw the Packard when the Chevrolet was stopped on the neutral ground and when the Packard was still about a half block away:

"Q. When you say the car stopped in the neutral ground before attempting to cross Rampart street, did you then look down Rampart street?
"A. Yes, I looked.
"Q. You looked, did you?
"A. Yes.
"Q. You could see down that street plainly, couldn't you?
"A. Sure.
"Q. Did you see any car coming?
"A. Saw it coming pretty near half a block, something like that."

Since the car was coming with its lights shining, it is evident that Fey, the driver of the Chevrolet, did not, in reality, look, because he must have seen it had he looked, and thus we can easily account for his failure to afford the Packard sufficient time to come to a stop.

Thus Fey, the driver of the Chevrolet, was also negligent and, but for his negligence in driving into the roadway immediately in front of the approaching Packard, the accident would not have occurred.

Since, then, both drivers were at fault, neither could recover from the other had either sustained injuries or other loss, but the question becomes more involved when we recall that it is not the driver of the Chevrolet who is plaintiff, but Williams, his guest, who exercised no control over and had no power to direct him.

Under these circumstances, that the negligence of the driver is not to be imputed to the guest is no longer a debatable question. Churchill v. Texas & Pacific Ry. Co., 151 La. 726, 92 So. 314-315; Daull v. N. O. Ry. & Light Co., 147 La. 1012, 86 So. 477; Luke et ux. v. M. L. & T.

R. R. & S. S. Co., 147 La. 30, 84 So. 483; Chopin v. Levy et al., 12 La. App. 567, 125 So. 142. But the contention of defendant is not that the negligence of Fey, the driver, is imputable to Williams, the guest passenger, but that Williams was guilty of independent negligence of his own in that he admits that he saw the Packard approaching at a very rapid speed and yet uttered no word of warning to Fey.

That there may be circumstances under which a guest passenger, who, though not affected by the negligence of the driver, is guilty of independent negligence of his own, is very evident and has been recognized by our courts, as well as by those of almost all other jurisdictions.

In Churchill v. Texas & Pacific Ry. Co., supra, the Supreme Court considered a case in which it was sought to prevent recovery by a guest passenger because of the negligence of his host. The court held that the negligence of the driver should not be imputed to the guest and that the guest could recover from the joint tort feasor, "unless the circumstances were such that the deceased could be charged with negligence of his own."

In Chopin v. Levy et al., supra, we found that a guest passenger was not prevented by the negligence of her host from recovering from a joint tort-feasor, unless "the circumstances were such that she could be charged with independent negligence on her own part." In Ruling Case Law, vol. 20, p. 159, is found the following:

"Of course, the occupant of a vehicle will not be permitted to recover where it appears that he, himself, was negligent, either in permitting the driver to encounter known dangers, or in failing to use his senses of sight and hearing to discover the perils of the highway."

And in support of the above statement, the following authorities are cited: Colorado & S. R. Co. v. Thomas, 33 Colo. 517, 81 P. 801, 70 L. R. A. 681, 3 Ann. Cas. 700; Miller v. Louisville Ry. Co., 128 Ind. 97, 27 N. E. 339, 25 Am. St. Rep. 416; Illinois Cent. R. Co. v. McLeod, 78 Miss. 334, 29 So. 76, 52 L. R. A. 954, 84 Am. St. Rep. 630; Brickell v. N. Y. Central R. R., 120 N. Y. 290, 24 N. E. 449, 17 Am. St. Rep. 648; Dean v. Penn. R. R., 129 Pa. 514, 18 A. 718, 6 L. R. A. 143, 15 Am. St. Rep. 733; Gulf R. R. v. Pendry, 87 Tex. 553, 29 S. W. 1038, 47 Am. St. Rep. 125.

In Corpus Juris, vol. 45, p. 1016, the rule is stated as follows:

"While negligence of the driver of a vehicle is not ordinarily imputed to an occupant, who neither has nor exercises the right to control the driver in the management of the vehicle, it is nevertheless, the duty of the occupant to exercise ordinary care to avoid injury. If he fails to exercise such care and his failure to do so concurs with the actionable negligence of the defendant and contributes to the injury complained of as a proximate cause, he is guilty of contributory negligence. * * * Recovery is denied to the occupant in such cases because of his own negligence and not by virtue of the doctrine of imputed negligence."

In addition to the cases to which we have already referred, several other Louisiana authorities support the view that, apart from the negligence of the driver, which, according to the relationship existing between the driver and the injured passenger, may or may not be imputed to the passenger, there may be independent negligence on the part of the occupant, which will bar recovery. For instance, in Toups v. Morgan's L. & T. R. R. & S. S. Co., 4 La. App. 136, a husband and wife were in an automobile driven by the husband. This court found that the negligence of the husband should not be imputed to the wife, but said that both "were recklessly disregardful of the approaching train, and that their negligence in this respect precludes recovery as to either of them." In Roberts v. Eason, 6 La. App. 703, 711, the court held that a wife could not recover from a joint tort-feasor for injuries sustained while riding in a car driven by her husband because she was guilty of independent negligence of her own in permitting her husband to trail too closely behind another car. In McQuiston v. Shreveport Rys. Co., 12 La. App. 277, 124 So. 706, 711, which is a case growing out of an injury sustained by plaintiff, who had been riding on a motortruck driven by another person and which was in collision with a street car, in which case recovery from the street car company was refused, the court said that the cause of the collision was the "joint negligence of Langford, the driver of the truck on which plaintiff was riding, and plaintiff himself."

In Leopold v. Texas & Pacific Ry., 144 La. 1000, 81 So. 602, 603, the facts were that a physician was riding with his son in an automobile driven by the son. They were struck at a railroad crossing, and recovery was denied the doctor because of his own independent negligence in not keeping a lookout and in not warning his son of the possible danger. The court said:

"These conditions placed upon both parties the duty of exercising extreme care at this crossing; and, inasmuch as Dr. Leopold admits that he never looked any more after stopping until the train was almost upon him, we must conclude that he, too, was guilty of negligence."

Later in the decision the court discussed a point peculiarly of interest here and held that the guest passenger, who was not driving the car, was better able to

look out for approaching danger than was the driver himself. The court used the following language·

"He was not driving himself, so that he was compelled to have his attention on the car."

In two cases from other jurisdictions, resembling closely the one at bar, we find the following:

(A guest passenger) "Who, when the auto was 30 ft. from the crossing, saw a car approaching 100 ft. away, but said nothing to the driver, who he knew did not see the approaching car, and did nothing whatever to avoid a collision, is guilty of contributory negligence as a matter of law." Brothers v. North Coast Power Co., 127 Wash. 570, 221 P. 311.

"Where one riding on a wagon, driven by his co-employee, saw at the same time as the driver a street car approaching 75 feet away, and did or said nothing to prevent his fellow employee from driving in front of the car, was guilty of contributory negligence as a matter of law." Kirschbaum v. Phila. Rapid Transit Co., 73 Pa. Super. Ct. 536.

We are, then, well assured that there are many conditions which, if they exist, place the duty of exercising care upon those who are guest passengers.

It may well be that one who is a guest passenger and who is thus not charged with the duty of operating the car is not called upon to maintain the constant, careful vigil which is required of the driver, and we can even imagine certain circumstances under which such a guest passenger is under no duty at all to look out for danger. But that is not the question which confronts us. The situation presented by the record does not raise the question of whether there is a duty to maintain a lookout for danger, but the question of the duty to warn and caution a driver about a danger which the guest sees and understands.

Here Williams saw the other car approaching at what he considered a dangerous rate of speed. Had it been approaching slowly, it may well be said that he was justified in assuming that it would accord to the car in which he was riding the right-of-way, but the speed itself indicated no such intention and showed plainly that a collision must occur, if the car in which he was riding proceeded into the roadway. They remained on the crossing a few seconds, and it was his duty, during this time, to make certain that the driver of his car saw and realized the impending danger. It is true, as we said in Alost v. J. Moock Wood & Drayage Co., Inc., 10 La. App. 57, 120 So. 791, 792, "experience tells us that back seat suggestions as to the handling of a car are disconcerting and irritating to the driver." However, we find nothing therein inconsistent with the view that the guest passenger should call attention of the driver to dangers which are apparent to the guest and which he has the better opportunity to see. Such suggestions should be reasonably made and should, of course, not take the form of what is commonly known as "back seat driving" and should not be more insistent or vociferous than is warranted by the occasion and by the certainty of the existence of danger. In the case at bar the Packard was approaching from the side of the Chevrolet on which plaintiff was seated. He had the better opportunity to see it, and its speed should have indicated to him that disaster was imminent, and his warning would have been effective because Fey, the driver, did not see the Packard, and it thus cannot be said that there was no necessity for him to call attention to the danger. The slightest word would have made certain that of which he was not sure; that the driver, Fey, saw the other car approaching.

Under the doctrine of the many cases to which we have referred, Williams was not justified in remaining silent and relying on his assumption that the driver saw the other car and appreciated the danger. The failure of Williams to exercise the slightest care prevents his recovery.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be and it is annulled, avoided, and reversed, and that this suit be dismissed, at the cost of plaintiff.

HIGGINS, J., takes no part.